JOHN J. LANDERS, PLAINTIFF, *v.* THE FRANK STREET (OTHERWISE CALLED THE SIXTH) METHODIST EPISCOPAL CHURCH, OF THE CITY OF ROCHESTER, DEFENDANT.

*Salary of minister—§ 8, chapt. 60 of 1813—Implied promise—when action lies on.*

Section 8 of chapter 60 of the Laws of 1813, providing how the salary of a minister is to be determined, does not prohibit another method of determining it than that therein prescribed.

Where a minister has, at the request of the proper authorities of the church, entered upon the discharge of his duties, under an understanding that he is to be compensated, and has performed them, and is appointed by his bishop for a second year with the knowledge of the trustees and the congregation, and performs the duties of the office, a promise is implied against the corporation to pay him therefor, upon which an action will lie in his favor.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a nonsuit directed at the Monroe Circuit.

The plaintiff was a Methodist minister, and brought the action to recover for a balance claimed to be due him as salary, for his services for the years 1873 and 1874. He entered into the performance of his services, pursuant to an appointment by the General Conference and upon the request of a committee of the church. He performed the services, and discharged the duties, pertaining to the position of minister in the edifice and congregation represented by the defendant, and claims to recover $2,000 for the first year, and $1,800 for the second year, less payments amounting to $2,988.84, leaving a balance of $811.16.

The complaint states: first, the incorporation of the defendant under the laws of the State; second, that plaintiff, as minister, "was employed by the defendant as pastor of the church of the defendant, and of the congregation worshiping there; and third, the performance of services for the defendant at its request, and in its employment for two years;" fourth, that the defendant, in consideration of such services, promised and agreed to pay the plaintiff therefor for the first year $2,000, and the second year the sum of $1,800. The answer contains: first, a denial; second, a defense of payment; third, a counter-claim for use of the furniture and the furniture destroyed.

The plaintiff was sworn and testified to the circumstances attending his employment, performance of the services, the partial payment, that he was waited upon by a committee of Frank Street Methodist Church, and that they invited him to take charge of the church; that he consented to; that he was appointed to take charge; that they told him they would make ample provision for him. He said "that on the 15th of November a quarterly conference of the church was held, and a committee of that church was appointed after consulting with me to fix the amount of salary; the amount of salary was then estimated at $2,000, and that estimate was accepted and confirmed by the quarterly conference, and accepted by me." This conference was composed of "the elders who represented the society; the stewards, who represented the congregation; the *trustees*, who represented themselves." He then testified that the prac-

tice in fixing the salary of Methodist ministers, "is to make any contract they please, it is always varied according to circumstances, the ability of the church, and the requirement of the person making the contract with them; there is no rule whatever in that respect that I am aware of." He was appointed by the Bishop for the second year; a letter was sent requesting his appointment, and he returned to the charge from the conference, for, and staid the second year.

Much evidence was given in respect to a vote by the congregation as to the discipline of the church, especially as to fixing the salary, and as to the powers of the respective divisions, and the regulations of the church. At the close of the evidence, the plaintiff requested to go to the jury upon the question of the contract, claiming that the evidence was sufficient and clear that there was a contract by the corporation defendant to pay the amount claimed in respect to each year.

This was refused, and the plaintiff excepted. The court then granted a nonsuit, and the plaintiff excepted thereto.

*J. C. Cochrane*, for the plaintiff.

*Edward Webster*, for the defendant.

HARDIN, J.:

The evidence indicated that the plaintiff was requested regularly to take care of the charge, in accordance with the discipline of the Methodist Church, as a minister of the Gospel, and that he complied with the request and entered upon the discharge of the duties, under an understanding that he should be compensated, and that at the close of the first year, he was reappointed in and continued in the discharge of his duties. Such performance of his duties was with the knowledge of the trustees of the defendant, and the congregation worshiping in the defendant's edifice; and the plaintiff thus became entitled to the compensation which he earned in the performance of such services. (*Dunn* v. *St. Andrew's Church*, 14 Johns., 118.) It was held in that case that assumpsit lies upon an implied promise against corporations. If the employment and the performance are with the knowledge

and acquiescence of those who are authorized by the corporation or who are authorized to act for it, it is bound to recompense the person performing the services. (*Hooker* v. *Eagle Bank*, 30 N. Y., 86.) Receiving the services, as in this case, after a request, gives rise to an implied assumpsit. (*Fister* v. *La Rue*, 15 Barb., 323; *Peterson* v. *Mayor*, 17 N. Y., 449.) The complaint contained such a statement of facts as would justify, upon the evidence received, a recovery predicated upon an implied promise to pay for the services which had been performed by the plaintiff as minister. The Code only requires the facts which constituted a cause of action to be averred.

The learned counsel for the defendant cites us to the 8th section of the 60th chapter of the Laws of 1813, and claims that there was no contract made in the mode prescribed in that section. (3 R. S., 693, § 8 [Edm. ed.].) That section provides that the salary "shall be ascertained by a majority of the persons entitled to elect trustees, at a meeting to be called for that purpose, and such salaries, when fixed, shall be ratified by the said trustees, or a majority of them, by an instrument in writing, under their common seal, which salary shall thereupon be paid by the said trustees out of the revenues of such church, congregation or society."

That does not prohibit any other mode of contracting, and it must be borne in mind that we are not considering an executory contract. Here the services have been performed, it must be presumed, upon the evidence, in the presence of the congregation and of the trustees. They have had the benefit of the services, and, according to the cases cited (*supra*), the corporation has become liable upon an implied assumpsit. Even, if the original employment was by unauthorized agents, the corporation could ratify their acts, and such acqiescence, as was presented by the evidence, would justify an inference of a ratification. (*Hoyt* v. *Thompson's, Ex'r.*, 19 N. Y., 207.) Besides, the corporation had power to waive any formality in the execution of a contract made for its benefit. (*Barnes* v. *Ontario Bank*, 19 N. Y. 169; *Trustees of F. B. Church* v. *B. F. Ins. Co.*, 19 id., 311.) The evidence was somewhat conflicting as to the requirements of the discipline, in respect to the salary of the minister, and that difference among the brethren as to its requirements, as well as all the

other disputed questions, should have been submitted to the jury, and the nonsuit was therefore improperly granted, and should be set aside and a new trial ordered, with costs to abide the event.

TALCOTT, P. J., and SMITH, J., concurred.

New trial granted, with costs to abide the event.